**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

**Clark Brunson, Jr.,**

                        *Plaintiff,*

**v.**                                                          **Case No. 3:16-cv-368**
                                                               **Judge Thomas M. Rose**

**Montgomery County, et al.,**

                        *Defendants.*

---

**ENTRY AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS MONTGOMERY COUNTY, MONTGOMERY COUNTY COMMISSIONERS, MONTGOMERY COUNTY ENVIRONMENTAL SERVICES, AND MONTGOMERY COUNTY HUMAN RESOURCES DEPARTMENT. ECF 38.**

---

Pending before the Court is Motion for Summary Judgment by Defendants Montgomery County, Montgomery County Commissioners, Montgomery County Environmental Services, and Montgomery County Human Resources Department. ECF 38. Therein, Defendants requests that the Court grant summary judgment on Plaintiff Clark Brunson Jr.'s claims for interference with rights under the Family Medical Leave Act (FMLA), 29 U.S.C. § 2611et seq., and retaliation for exercising these rights. Because Brunson is not able to identify evidence presentable to a jury that, if believed, would satisfy his burden on every element of either claim, the motion will be granted.

**I.      Background**

Montgomery County Environmental Services provides water, sewer, trash, and recycling

services to citizens and businesses in Montgomery County, Ohio. Mazza Declaration, Ex. 1. Plaintiff was hired by Montgomery County Environmental Services in October of 2007 as a Water/Sewer Worker I. Brunson Dep. at 38:2-9. Plaintiff's primary duties as a Water/Sewer Worker I consisted of sewer and water facility maintenance. Id. at 38:10-13. Plaintiff's duties remained consistent throughout his employment and Plaintiff's job title remained the same. Id. at 40:11-14; Id. at 42:4-13. Plaintiff never received a demotion or reduction in pay. Id. at 42:14-25.

During the course of Plaintiff's employment, Plaintiff was a bargaining unit employee. Id. at 39:11-15. Plaintiff, as a bargaining unit employee, was entitled to a grievance process, which permitted Plaintiff to "grieve" issues. Id. at 47:18-25; 48:1-25; 49:1-25; 50-1-13. Plaintiff's union representative served as Plaintiff's advocate in the grievance process. Id at 49:6- 17

Plaintiff filed the first of several grievances over the course of his employment on January 4, 2010. Brunson Dep., Ex. A; Brunson Dep. 50:21-25; 51:1-25; 52:1-25; 52:1-19. Plaintiff's January 4, 2010 grievance alleges he was not afforded a pay grade increase after he passed an EPA test on May 13, 2009. Id. The January 4, 2010 grievance makes no allegation of discrimination. Id. This grievance was denied because Plaintiff had not received other certifications yet, as required. See Brunson Dep., Ex. B.

Plaintiff filed his second grievance on February 1, 2013. Brunson Dep. Ex. C. The grievance alleged management denied Plaintiff the use of his vacation time. Id. Plaintiff's grievance did not allege any discrimination on the basis of protected class. Id.; Brunson Dep. Ex. C.; Ex. D. Management denied the grievance, finding that Plaintiff was aware that a mandatory safety training was scheduled for the day in question, as the safety training was posted in the

breakroom on October 21, 2013, prior to the Plaintiff's request to take vacation on October 22, 2013. Id.

From July through August 2013, Defendants advertised a Crew Leader I position on external and internal job postings. Brunson Dep. Ex. F. Forty-eight individuals applied. Id. Six internal candidates were selected for consideration. Id. One applicant rescinded his interest, leaving five candidates. Id. at 219. Initially, four Crew Leader I positions were available. Id. One of the positions was open due to a long-term medical leave of absence within the department. Id. Prior to selecting the candidates to fill the positions, the employee on long-term medical leave advised he would be returning. Id. As a result, only three Crew Leader I positions remained available. Id.

On August 26, 2013, a four-member panel interviewed the candidates. Id. at PID 218. The four-member interview panel was diverse, consisting of two women and two men; two African Americans and two Caucasians. Id. The panel scored each of the candidates based upon their interview performance, including leadership-based questions, skills, experience and education. Id. at PID 218-20. At the conclusion of the assessments, three of the five candidates were selected to fill the three open Crew Leader I positions. Id. at PID 218. The panel did not select Plaintiff and he filed a grievance. Brunson Dep. Ex. E. As stated in the written grievance decision by management:

> Mr. Brunson did not establish during the interview process that he was a good choice for a Crewleader I position. His application and resume were not current and had conflicting education and job histories […] [H]alf of his responses to the leadership-based questions rated only fair. His answers did not demonstrate that he had direct experience in areas such as working through stressful situations, applying problem solving skills, and building consensus with team members. Mr. Brunson scored significantly lower in

> these six leadership questions than did the three candidates
> recommended for promotion. […]

Brunson Dep. Ex. F; Plaintiff's Amended Complaint Ex. 3, PID 220.

The individuals selected to fill the three open positions were Benjamin Bennett, Randie Hall and Christopher Ney. Mazza Declaration, Ex. 1. Bennett received an adjusted score of 31.2 as a result of his seniority. Id. Bennett started at Montgomery County Environmental Services on August 23, 2004. Id. Hall received an adjusted score of 30.6 for his seniority. Id. Hall started with Montgomery County Environmental Services on August 1, 2011 and had two years of employment with Montgomery County Environmental Services at the time. Id. Ney received an adjusted score of 28.56 for seniority. Id. Ney was employed by Montgomery County Environmental Services since October 1, 2007, at the time of his promotion. Id. All of the selected individuals were union members and all were within the same department as Plaintiff. Mazza Declaration, Ex. 1. In comparison, Plaintiff received an adjusted score of 22.88 for seniority. Id.

On or about March 11, 2014, Plaintiff received a "Counseling Statement" for willful insubordination for three incidents that occurred in January of 2014. Brunson Dep. Ex. H. The January 8, 2014 incident involved Plaintiff being upset about a decision reached regarding requested leave time. Id. Plaintiff was instructed to return to work, but continued to argue with the decision. Id. The second incident of insubordination occurred on January 9, 2014, the following day. Id. Plaintiff was again arguing with his supervisor about the decision concerning his leave approval. Id. Plaintiff again refused to return to work. Id

The next incident occurred on January 22, 2014, during a wellness screening that was occurring at work in one of the breakrooms. Id. Plaintiff did not have an appointment and did not wish to be seen for screening. Id. Plaintiff was asked by supervisors to use a different breakroom,

as the employees there were taking part in a medical exam. Id. Plaintiff refused to do so, indicating that the request was "dumb and he was not moving." Id. In conjunction with the Counseling Statement received March 11, 2014 for insubordination, Plaintiff received a Performance Improvement Plan concerning the same. Brunson Dep., Ex. J.

Plaintiff received a Counseling Statement on June 3, 2014 concerning chain-of-command and communication issues about an incident that occurred on June 3, 2014. Brunson Dep. Ex. L. This incident arose out of a product demonstration by an outside vendor who was presenting to Montgomery County Environmental Services. Id. During the presentation, Plaintiff disruptively mumbled comments under his breath that were heard by his co-workers and the presenter. Id; Brigham Declaration, Ex. 3. Plaintiff's frequent disruptions caused the vendor to stop his presentation multiple times. Id. Following the presentation, Plaintiff contacted a competitor of the manufacturer who presented at Montgomery County Environmental Services and advised the manufacturer that a different company had presented their product to the county. Id. Plaintiff did not have authorization to contact vendors and in doing so, Plaintiff damaged the reputation of Montgomery County Environmental Services with both companies. Id. This conduct also resulted in a July 2, 2014 Performance Improvement Plan. Brunson Dep. Ex. L; Brunson Dep. Ex. M.

Plaintiff received a Counseling Statement on or about June 24, 2014 for failing to follow protocols. Brunson Dep. Ex. K. This arose out of incidents that occurred while Plaintiff was a volunteer with a Montgomery County program called Youth Works. Id. Youth Works is a Montgomery County program that allows high school students to shadow Montgomery County Environmental Services employees at work. Brunson Dep., 125:18-23, at PID 350. Plaintiff's

involvement in the program was voluntary. Id. at 126:17-24, PID 350. Plaintiff was concerned the program was not in compliance with child labor laws. Brunson Dep. Ex. I; Brunson Dep. 128:16-25, PID 350; 129:1-25; 130:1- 25, PID 351; See also Plaintiff's Amended Complaint, Doc. No. 24, at ¶ 18. It was explained to Plaintiff that the minors were only working five hours a day and the program was in compliance with the law. Id. Plaintiff did not raise his concerns through the proper chain of command. Brunson Dep. Ex. K.

Around June 24, 2014, Plaintiff sustained an injury that prevented him from working his normal duties. Brunson Dep. 155:5-13, PID 357. As a result, Plaintiff was placed on light-duty work restrictions. Id. Montgomery County Environmental Services did not have work available that accommodated the light-duty work restrictions at that time, so Plaintiff was provided a Modified Duty Off-Site Program at the Food Bank. Brunson Dep. Ex. N; Brunson Dep. 155:14-24; 158:4-13, PID 358. Plaintiff maintained the same pay and the position was temporary until Plaintiff could return to work without restrictions. Brunson Dep. 158:14-17, PID 358; Brunson Dep. Ex. N. While in the program, the employee remained an employee of the county and was covered by county policies. Id. Plaintiff signed an agreement that laid out this information, including the requirement that his weekly attendance records be received by Montgomery County on Monday of each week. Id.; Brunson Dep. 160:8-17, PID 358.

Plaintiff failed to submit his attendance sheets to Montgomery County Environmental Services in a timely fashion on numerous occasions. Brunson Dep. Ex. O. Plaintiff's supervisors occasionally called Plaintiff during normal work hours to request he submit his late timesheets. Brunson Dep. Ex. O. Plaintiff was upset with receiving calls and filed grievances over them, characterizing them as "harassment." Brunson Dep. Ex. P; Brunson Dep. Ex. Q; Brunson Dep. Ex.

R.   Plaintiff demanded that he receive no further calls. Brunson Dep. Ex. R; Brunson Dep. Ex. O. When asked whether there is a Montgomery County policy that states his employer is not permitted to contact him during work hours, Plaintiff stated, "No. I was—I told them not to call me on my cell phone. […] So, no, it was my policy." Brunson Dep. 168:15-22, PID 360.

Plaintiff received his annual performance evaluation for October of 2013 through October of 2014 on or around November 24, 2014. Brunson Dep. Ex. T.   Plaintiff's performance evaluation is divided into two categories, one of which is job performance and the other "principled behaviors," which includes teamwork, integrity, commitment, excellence, innovation and mutual respect. Id.   Plaintiff received "meets expectations" ratings in the job performance categories, but "does not meet expectations" in three of the "principled behaviors." Id.

Plaintiff's performance evaluation indicated that he had a Counseling Statement and an active Performance Improvement Plan from March 11, 2014. Id.; See also Brunson Dep. Ex. H and Ex. J.   This section of Plaintiff's performance evaluation also indicates that Plaintiff received a Counseling Statement from June 3, 2014 regarding disruptive behavior involving the vendors and Youth Works. Id.; See also Brunson Dep. Ex. K, Ex. L and Ex. M.   As a result of Plaintiff receiving a "does not meet expectations" score in two or more categories of the "Principled Behaviors" section, Plaintiff received an overall score of "does not meet expectations" in "Principled Behaviors." Id.   One or more overall "does not meet expectations" grade(s) in one of the two categories, results in an overall "does not meet expectations" for the annual performance evaluation. Id.

On January 2, 2015, Plaintiff requested vacation leave for the same day, against county policy. Brunson Dep. Ex. W.   Plaintiff's supervisor, Dan Baines, sent Plaintiff an email which

included excerpts from Montgomery County Environmental Services-Work Rules handbook concerning requesting time-off and leave procedures. Id. This email included the section on AWOL. Id.

On January 22, 2015, Plaintiff received a written reprimand for failing to report to work from November 17-21, 2014. Brunson Dep. Ex. V. Plaintiff provided a MedCo 14, which is a Physicians' Report of Work Ability, detailing his ability to work, from a November 19, 2014 physician visit that had retroactive application, indicating that Plaintiff was to be off-duty from November 17, 2014 through November 21, 2014. Id. County policy does not permit the retroactive application of a MedCo14, so the dates of November 17-18, 2014 were Leave of Absence without Pay. Id.; See also Brunson Dep. Ex. U; Brunson Dep. 227:18-22, PID 375.

Plaintiff's issues with attendance and communication continued, culminating with Plaintiff's eventual termination for going AWOL. See Brunson Dep. Ex. FF; Ex. GG. Plaintiff's supervisor, Dan Baines, sent Plaintiff an email dated February 10, 2015, indicating that Montgomery County Environmental Services had not heard from Plaintiff on that date as to whether he would be returning to work that day. Brunson Dep. Ex. Y. Baines reminded Plaintiff that he is required to contact his supervisor daily (following the county policies for calling off/notification). Baines' email further notes that failure to notify is considered "No Call No Show/AWOL." Id.

Baines sent Plaintiff an email on March 13, 2015, advising Brunson that he had called off the last three mornings (March 11-13, 2015) by leaving a voicemail and it was unclear the type of leave being requested. Brunson Dep. Ex. Z. Baines indicates that the first day Plaintiff called in, on March 11, 2015, Plaintiff requested "Sick FLMA." Id. The next two days, March 12-13, 2015,

Plaintiff called in and requested "another sick day." Id. Baines indicates in his email to Plaintiff "I need clarification for your request." Id. Baines concludes the email by stating that Baines has left Plaintiff phone messages the last two mornings with no return phone calls from Plaintiff regarding the requested information. Id.

On March 16, 2015, Plaintiff sent an email to supervisor Baines and Montgomery County Environmental Services HR Manager Jan Mazza. Brunson Dep. Ex. AA, P.2. The email from Brunson declared:

> […] I have requested verbally, as well as in writing, for members of management to refrain from using my personal cell phone number to contact me. […] I am off duty, at home, and recuperating on a requested, Sick Leave. […] Again, management is NOT to use my personal cell phone in the future, under any circumstances. Any medical documentation needed to support my Sick leave request, will be forwarded to the proper personnel as soon as possible.

Id. The email from Brunson acknowledged that medical documentation had yet to be provided as of March 16, 2015, five days after Plaintiff first took off work and characterized his time off as sick leave and not FMLA. Brunson Dep. Ex. AA, P. 2.

On March 16, 2015, the same day as Plaintiff's email, Jan Mazza sent Plaintiff an email explaining Plaintiff's vague messages do not have enough information to determine whether Plaintiff's time away from work should be Sick FMLA, paid personal leave (PPL), sick time or leave without pay. Id. Mazza goes on to state that Baines had called Thursday and Friday of the prior week seeking clarification as to the type of leave Plaintiff was taking. Id. Mazza states that Plaintiff has not returned Baines' messages. Id.

On March 26, 2015, Jan Mazza sent Plaintiff an email advising that a message was left by Plaintiff on the morning of March 23, 2015, with Plaintiff's supervisor, Dan Baines, that Montgomery County Environmental Services should have received a packet of information from Plaintiff's physician. Brunson Dep. Ex. AA. Mazza indicates in the email to Plaintiff that such a packet from his physician was never received. Id. Mazza further notes:

> Clark, you have not reported to work since March 11, 2015. […] At this time, Clark, you have not provided medical documentation to support using Sick Leave to cover your time away from work and you do not have enough vacation or personal time to cover the days you have missed. […] If you cannot provide documentation by 3pm, Friday March 27, call me so we can discuss the situation.

Brunson Dep. Ex. AA.

On April 3, 2015, a letter was sent by Jan Mazza to Brunson advising that Plaintiff has been absent without approved leave and without notifying a supervisor March 31, 2015, April 1, 2015 and April 2, 2015. Brunson Dep. Ex. BB. The letter states that when an employee is absent from work without approved leave and without notification for three consecutive work days, the employee is subject to removal. Id. The letter goes on to state that Plaintiff is in violation of Montgomery County's policies related to continued absences. Id. A pre-disciplinary hearing was scheduled for April 7, 2015. Id.

When asked why Plaintiff did not feel it was necessary to respond to his employer's requests for clarification as to what type of leave Plaintiff was requesting, Plaintiff stated:

> Well, again, when I said sick, it was sick. So at the time until I get my—until they get the actual paperwork from the doctor, because again, I had multiple things going on. So depending on what I—how it might have been coded, I don't want to say sick FMLA because if I would have gone and it would have just been sick, then again, I was threatened with falsification of documents. So that's why I kept it at sick."

Brunson Dep. 244:12-25, PID 379.

On April 3, 2015, Plaintiff provided a MedCo 14 to Montgomery County Environmental Services from Plaintiff's physician, Dr. Brenda Ellis. Brunson Dep. Ex. CC.   The form indicated that Plaintiff may return to available and appropriate work with restrictions from March 16, 2015 through April 16, 2015. Id.   The MedCo 14 also states that Plaintiff's restrictions are temporary and will only last until April 17, 2015. Id.   Upon receipt of this MedCo 14 from Plaintiff, Mazza sent Plaintiff a letter on April 6, 2015, indicating that Plaintiff had not responded to work since March 11, 2015. Brunson Dep. Ex. DD.   The letter indicates Defendant has available appropriate short-term, temporary transitional duty to accommodate Plaintiff's restrictions and that he should report to work. Id.   Plaintiff did not return this form.

On April 10, 2015, Montgomery County Environmental Services received a new MedCo 14 from Plaintiff's physician. Brunson Dep. Ex. EE.   The new MedCo 14 removed the designation that Plaintiff was released to work with light duty restrictions for the relevant time period and indicated instead Plaintiff cannot work the dates of March 16, 2015 through April 16, 2015. Id. Plaintiff did not return to work during that period nor did Plaintiff return to work after the April 16, 2015 date, which was set forth in the MedCo 14.   Plaintiff continued to be a no show/no call-in April 17, 2015, April 20, 2015 and April 21, 2015. See Brunson Dep. Ex. FF; Ex GG; Mazza Declaration, Ex 1.

Plaintiff was sent a letter dated April 21, 2015 by Jan Mazza indicating that Plaintiff was being placed on paid administrative leave. Brunson Dep. Ex. FF.   On May 5, 2015, Plaintiff was removed from his position by the Montgomery County Board of County Commissioners, effective May 8, 2015, for being AWOL. Brunson Dep. Ex. GG.   A letter was sent to Plaintiff indicating

Plaintiff failed to call in to report his absence for the period of March 31, 2015 through April 20, 2015. Id.   The letter states that Montgomery County policy provides that continued absences of three days or more with failure to properly notify your department is grounds for termination. Id

Plaintiff filed a complaint with this Court on August 30, 2016. ECF 2.   An Amended Complaint was filed on April 28, 2017.   Defendants filed a motion for summary judgment, ECF 38, which is now ripe.

## II.     Standard of Review

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. See *Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003).   A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is "'whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

## III.   Analysis

## A.   FMLA Retaliation Claim

To establish a *prima facie* case of retaliation, a plaintiff must show: (1) he was engaged in an activity the FMLA protects; (2) defendant knew he was exercising his FMLA rights; (3) defendant took an employment action adverse to him; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action. *Jaszczyszyn v. Advantage Health Physician Network*, 504 Fed. App'x 440, 447 (6th Cir. 2012) (quoting *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006)).   Unlike the interference theory, in a retaliation theory, motive is relevant "because retaliation claims impose liability on employers that act against employees specifically *because* those employees invoked their FMLA rights." *Seeger v. Cincinnati Bell Tele. Co., LLC.*, 681 F.3d 274, 282 (2012) (quoting *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006)) (emphasis in original).   The language of Ohio Revised Code 4112.02(I) is virtually identical to 42 U.S.C. 2000e3(A) and therefore the same elements and analysis applies to both. *Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007-Ohio-6442, 879 N.E.2d 174, at ¶ 12.

Two types of protected activity are recognized under the first prong for establishing a retaliation claim. *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989).   The first type of protected activity is participation in a proceeding with the Equal Employment Opportunity Commission or the Ohio Civil Rights Commission. Id.   The second type of protected activity is opposition to an apparent Title VII violation. Id.   Voicing concerns

and complaining about unlawful conduct to management is acceptable opposition activity for purposes of the first element. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 580 (6th Cir. 2000).

While the opposed conduct need not actually violate Title VII in order to qualify as participation; the employee must still have reasonably believed it to be a violation of Title VII. *Bacon v. Honda of America Mfg., Inc.*, 192 Fed. App'x 337, 342–43 (6th Cir. 2006). Absent a reasonable and good faith belief that the conduct reported was a violation of Title VII, a plaintiff cannot satisfy the first prong. *Wasek*, 682 F.3d at 469.

There are two types of situations in which a plaintiff fails to satisfy the reasonable and good faith belief portion of the participation prong. Id. First, a plaintiff cannot satisfy the reasonable, good faith belief standard when the plaintiff makes an unreasonable mistake of law. *Holden v. Owens-Illinois, Inc.*, 793 F.2d 745, 748 (6th Cir. 1986). Second, a plaintiff cannot satisfy the standard if there are no facts from which a plaintiff could reasonably have believed that a violation occurred. *David v. ANA Television Network, Inc.*, 208 F.3d 213, 2000 WL 222575, at *5 (6th Cir. 2000). The severe or pervasive requirement for Title VII has an objective and subjective component to it, requiring consideration of the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's performance. *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 707 (6th Cir. 2007). Courts have found that fifteen specific incidents spanning a two-year period was isolated and not sufficiently pervasive. Id.

Plaintiff contends that his participation in EEOC or OCRC proceedings in August 12, 2014, March 11, 2015 and May 28, 2015 was the protected activity he participated in. This makes the

window for retaliation to those time periods, not after Plaintiff's application for the Crew Leader I position in 2013.

Plaintiff points out that a negative performance evaluation can be a materially adverse employment action. *Halfacre v. Home Depot, U.S.A., Inc.*, 221 F. App'x 424 (6th Cir. 2007). Plaintiff relies on negative performance evaluations (Doc #36-20), counseling statements (ECF 36-8; 36-11; 36-12) and performance improvement plans (ECF 36-10; 36-13; 36-24) as the basis of his claim for retaliation. (Brunson Dep., ECF 36 177:1-24).

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must demonstrate that "there was a causal connection between the protected activity and the adverse employment action." *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990). No causal connection exists between the three grievances Plaintiff filed prior to 2013 and Plaintiff's failure to receive the vacant Crew Leader I position. See Plaintiff's Amended Complaint, ECF 24, ¶¶ 5-7. Plaintiff has not demonstrated that he had a good faith basis to believe that any of these three grievances concerned activity unlawful under Title VII. Moreover, Defendants had articulated legitimate, non-discriminatory reasons for the selection of the qualified candidates, who all out performed Plaintiff in their individual interview assessments.

Likewise, no causal connection exists between Plaintiff's supposed participation in protected activity and his termination. There were legitimate, non-discriminatory reasons for Plaintiff's termination. Plaintiff was terminated for a violation of the Montgomery County attendance policy, which mandates that an employee either call into work to report a valid reason for absence or report to work each day. Plaintiff was a no show/no call-in for March 31, 2015 through April 3, 2015; April 6, 2015 through April 10, 2015; April 13, 2015 through April 17,

2015; and April 20, 2015 through April 21, 2015. The April 17, 2015, April 20, 2015 and April 21, 2015 no show/no call/AWOLs all occurred after Plaintiff's MedCo 14 return to work date of April 17, 2015. See Mazza Declaration, Ex. 1; Brunson Dep. Ex. U; Brunson Dep. Ex. FF; Ex. GG. Montgomery County Policy advises that a failure to call-in or attend work for three days or more is grounds for termination. See Mazza Declaration, Ex. 1; Brunson Dep. Ex. U. An employee going AWOL is a legitimate, non-discriminatory reason for termination and has no causal connection to Plaintiff's participation in protected activity.

According to Plaintiff, the causal link between the two is apparent from Plaintiff's testimony stating "pretty much every one of these papers, you'll see a grievance probably coinciding with why and that it was stated that it was retaliatory, that it was harassment in direct response to all of my complaints, all of my grievances and my Ohio Civil Rights charges." (Brunson Dep ECF 36 226:20-25). Plaintiff, however, has no basis for this knowledge. Fed. R. Evid. 602. It amounts to no more than restating the allegations in his complaint.

Moreover, even if a plaintiff establishes a *prima facie* case of discrimination, the burden then shifts to the defendant to offer evidence of a legitimate, nondiscriminatory reason for its adverse action. If the defendant satisfies its burden, the burden shifts back to the plaintiff to identify evidence from which a reasonable jury could find that the stated reason is a pretext for discrimination. *Cutcliffe v. Wright State Univ.*, No. 3:17-CV-222, 2019 WL 316909, at *9 (S.D. Ohio Jan. 24, 2019).

Montgomery County Environmental Services has asserted a legitimate, non-discriminatory reason for Plaintiff's 2014 performance evaluation overall score of "does not meet" expectations. Brunson Dep. Ex. T. According to Defendants, Plaintiff's "does not meet"

score in the "Team Work" category of his 2014 performance evaluation was based on three occurrences of willful insubordination documented in a March 11, 2014 counseling statement and performance improvement plan. See Brunson Dep. Ex. T, Brunson Dep. Ex. J; Brunson Dep. Ex. H.   Also, Plaintiff's "does not meet" grade was a result of a June 3, 2014 counseling statement concerning Plaintiff's disruptive behavior and negative actions during a vendor demonstration and likewise, disruptive involvement with the Montgomery County Youth Works program as documented in a June 19, 2014 counseling statement. See Brunson Dep. Ex. T; Brunson Dep. Ex. K; Brunson Dep. Ex. L.   These incidents of documented disruptive behavior and willful insubordination would constitute legitimate, non-discriminatory reasons for Plaintiff's "does not meet" expectations grade on his 2014 performance evaluation.   Plaintiff does not attempt to rebut Defendants' description of these incidents.

Likewise, Plaintiff's score of "does not meet" expectations in the "Integrity" section of his 2014 performance evaluation was the result of a counseling statement received on June 19, 2014 that discusses Plaintiff's need to follow proper chain of command and stay on his work assignments. Brunson Dep. Ex. T; Brunson Dep. Ex. K.   This grade was a result of a performance improvement plan from March 11, 2014, with a follow-up on July 2, 2014, documenting Plaintiff not reporting to the job site in a timely manner and leaving Plaintiff's work assignment. Brunson Dep. Ex. T; Brunson Dep. Ex. H; Brunson Dep. Ex. M.   Repeated incidents of failing to follow orders would constitute legitimate, non-discriminatory reasons for Plaintiff's poor performance evaluation.   Likewise, Plaintiff's "does not meet" grade on his 2014 performance evaluation in the "Mutual Respect" category references Plaintiff's performance improvement plans, counseling

17

statements and written reprimands received in 2014. Brunson Dep. Ex. T. Plaintiff does not refute Defendants' assertions of incidents of failure to follow policy and orders.

Plaintiff's written reprimand and performance improvement plan that issued January 22, 2015, was the result of Plaintiff's five incidents of unauthorized leave without pay, for failing to report to work November 17-November 21, 2014. Brunson Dep. Ex. V. Failure to report to work without authorized leave is a violation of Montgomery County policy and a legitimate, non-discriminatory reason for issuing this reprimand. Brunson Dep. Ex. V; Mazza Declaration, Ex 4; Ex. 4-1; Ex. 4-2. Notably, Plaintiff does not argue that he did not violate Montgomery County policy by failing to report to work November 17-November 21, 2014 or provide proper documentation for his absences.

Plaintiff's other written reprimands, performance improvement plans and counseling statements that occurred prior to his first participation in protected activity each lays out a legitimate, non-discriminatory reason for why Plaintiff received it. Plaintiff's March 11, 2014 counseling statement was for engaging in three separate incidents of insubordination. Brunson Dep. Ex. H; Brunson Dep. Ex. J. Plaintiff's counseling statement on June 3, 2014 arose out of a chain-of-command issue when Plaintiff contacted an outside vendor and disrupted a vendor presentation by talking loudly throughout the presentation, causing the speaker to stop his presentation numerous times. Brunson Dep. Ex. L; Brunson Dep. Ex. M. Plaintiff's counseling statement from June 24, 2014, arose out of Plaintiff's continued failure to follow protocol by causing a disruption in the Montgomery County Youth Works program. Brunson Dep. Ex. K. These are all legitimate, non-discriminatory reasons for issuing performance related directives, as this conduct violated policy and procedure.

Because Plaintiff can neither establish a causal connection between protected FMLA activity and an adverse employment action, nor rebut any of Defendants' asserted legitimate, non-discriminatory reasons for issuing adverse employment actions, Defendants' motion will be granted on this claim.

**B.    FMLA Claim**

"To successfully present a *prima facie* case of FMLA interference, Plaintiff must show "'that (1) he was an eligible employee; (2) Defendant was an employer subject to the FMLA; (3) he was entitled to leave under the FMLA; (4) he gave his employer notice of his intention to take FMLA leave; and (5) Defendant denied him FMLA benefits to which he was entitled." *Romans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 840 (6th Cir. 2012) (internal citations omitted).

Defendants assert Plaintiff cannot meet the requirements of the third, fourth or fifth elements of FMLA interference.   As to the third element, that the employee was entitled to leave under the FMLA, Plaintiff never provided Defendants FMLA paperwork or certification demonstrating a serious health condition as defined by 29 U.S.C. § 2611(11).   Plaintiff began taking off work on March 11, 2015. Brunson Dep. Ex. DD.   Plaintiff provided a MedCo14 form on April 3, 2015, which indicated Plaintiff could work with light duty restrictions from the period of March 16, 2015 through April 16, 2015. Brunson Dep. Ex. DD; Ex CC.   This MedCo14 form was not FMLA paperwork and nowhere on the form did it indicate that Plaintiff had a serious medical condition qualifying for FMLA leave or that Plaintiff was invoking FMLA leave. Id.

To the contrary, this MedCo14 indicated Plaintiff could return to work and work light duty restrictions.   The only other medical documentation provided by Plaintiff was a new MedCo14 on April 10, 2015 from Plaintiff's physician indicating that Plaintiff could not work for the

previously mentioned period of March 16, 2015 through April 16, 2015. Brunson Dep. Ex. EE. This MedCo14 was received nearly a month after Plaintiff's first absence on March 11, 2015. Brunson Dep. Ex. DD. This MedCo 14 does not indicate that Plaintiff is invoking FMLA leave or that Plaintiff is reporting an FMLA qualifying serious injury. Id. A MedCo14 is simply a physician's report of workability for workers' compensation claims. Plaintiff provides no documentation or proof to support his claim that he had begun the process for obtaining medical leave under the FMLA, as alleged in his Amended Complaint.

Providing notice that a plaintiff was requesting time off for a serious health condition is essential in order to adequately inform an employer that an employee is requesting leave under the FMLA. See *Metroka-Cantelli v. Postmaster General*, 131 F.Sup.3d 691, 699 (2015)("[T]he critical question [as to whether the employee has provided adequate notice to be entitled to FMLA leave] is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition."

In addition to a lack of proper medical documentation from a physician certifying an FMLA claim, Plaintiff failed to meet the notice requirements of the FMLA under the fourth element, which is fatal to a claim for FMLA interference. *Walton v. Ford Motor Co*., 424 F.3d 481 (2005); see also *Brenneman v. MedCentral Health System*, 366 F.3d 412 (2004). In 29 C.F.R. § 825.303 (a), the FMLA's default statutory requirements for notice for unforeseeable leave, are listed as "an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case. It is expected that an employee will give notice to the employer within no more than one or two working days of learning

of the need for leave, except in extraordinary circumstances where such notice is not feasible. 29 C.F.R. § 825.393 (a); See also *Walton v. Ford Motor Co*., 424 F.3d 481, 485 (6th Cir. 2005).

Montgomery County's policy for unforeseeable situations requires that the Request for Leave and any necessary documentation must be submitted as soon as possible. Leaves involving the FMLA may be provisionally approved; however, medical certification must be submitted within 15 days of management's request. Brunson Dep. Ex. U.; Mazza Declaration, Ex. 1-A. Montgomery County's internal procedures are therefore consistent with the FMLA's and not stricter. See *Walton v. Ford Motor Co.*, 424 F.3d 481, 485–86 (6th Cir. 2005).

"To invoke the FMLA's protection for this qualifying reason, the eligible employee, during his employment, must request leave and give the employer notice that he is requesting such leave for a serious health condition that renders him unable to perform his position's duties." *Brohm v. JH Properties, Inc*., 149 F.3d 517, 523 (6th Cir. 1998); *Brenneman v. MedCentral Health Sys*., 366 F.3d 412, 421 (6th Cir. 2004). The test for substantively sufficient notice is whether the information that the employee conveyed to the employer was reasonably adequate to apprise the employer of the employee's request to take leave for a serious health condition that rendered him unable to perform his job. *Brenneman v. MedCentral Health Sys*., 366 F.3d 412, 421 (6th Cir. 2004). The eligible employee must also give the employer this substantive notice within the requisite time frame. Id. (emphasis added).

Once an employer receives sufficient notice that the eligible employee is requesting leave for an FMLA qualifying reason, the employer bears the burden to gather any additional information necessary for the leave to fall within the FMLA. Id. at 422. While an "employee need not expressly assert rights under the FMLA or even mention the FMLA," the employee must give

"the employer enough information for the employer to reasonably conclude that an event described in FMLA § 2612(a)(1)(D) has occurred." *Hammon v. DHL Airways, Inc.*, 165 F,3d 441, 451 (6th Cir. 1999). Saying one is "sick" does not imply a "serious health condition." *Satterfield v. Wal-Mart Stores, Inc.*, F.3d 973, 981-82 (5th Cir. 1998). Where the leave is due to a serious health condition of the employee that prevents him from performing his job, the requested certification is sufficient if it states the date upon which the serious health condition began, the condition's probable duration, the appropriate medical facts regarding the condition within the healthcare provider's knowledge, and a statement that the employee is unable to perform his position's duties. 29 U.S.C. § 2613(b).

Here, Plaintiff failed to give Defendants notice that was substantively sufficient or within the necessary time frame for unforeseeable leave. This is fatal to the fourth element of an FMLA interference claim. First, Plaintiff's first provision of medical documentation was a MedCo14 provided April 3, 2015, beyond the two days requirement for certification under the FMLA and the 15 days after a request for certification by management as set forth in county internal policies. This first MedCo14 provided April 3, 2015 failed to adequately convey Plaintiff was experiencing a serious health condition preventing him from working, as required by the FMLA, as the document instead indicated Plaintiff could work with restrictions.

It was not until April 10, 2015, that Plaintiff provided a MedCo14 from his physician that indicated that Plaintiff was unable to work during the March 16, 2015 through April 16, 2015 period, which is even further outside of the time frame requirements for certification under the FMLA and county internal policies. This April 10, 2015 MedCo14 was approximately a month after Plaintiff's first absence on March 11, 2015. This second MedCo14, despite indicating

Plaintiff could not work, was facially insufficient to demonstrate the required information to convey a serious health condition certification under the FMLA, as it failed to provide all of the essential information required under 29 U.S.C. § 2613(b).

Plaintiff's limited contacts with his supervisors were never more than voicemails prior to the start of a supervisor's shift or emails and never a live interaction with management despite countless requests for clarification, did not reasonably apprise Defendants that Plaintiff's absences were a result of a serious health condition. See *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 429 (6th Cir. 2004). When Plaintiff left a voicemail prior to the start of his supervisor's shift on March 11, 2015, Plaintiff indicated he was "taking Sick FMLA." See Brunson Dep. Ex. Z. However, the next two days March 12, 2015 and March 13, 2015, Plaintiff indicated he was taking "another sick day." Id. Plaintiff's supervisor sent Plaintiff an email on March 13, 2015, requesting clarification as to whether Plaintiff was invoking FMLA or sick leave for March 12-13, 2015. Id. No clarification was ever received. Instead, Plaintiff sent an email to his supervisor on March 16, 2015 indicating that his supervisor should stop calling his phone asking for clarification, as he was recuperating on sick leave and "any medical documentation to support my sick leave request, will be forwarded to the proper personnel as soon as possible." Brunson Dep. Ex. AA, P. 2.

Jan Mazza sent Plaintiff an email the same day, indicating that his employer does not have enough information and it is unclear whether Plaintiff is taking sick days or FMLA. Id. This continued for weeks without any clarification. See Defendants' Fact Section G. Plaintiff acknowledged in his deposition he was unsure what type of leave he was taking, "Well, again, when I said sick, it was sick. […] I don't want to say sick FMLA because if I would have gone

and it would have just been sick, then again, I was threatened with falsification of documents.   So that's why I kept it at sick." Brunson Dep. 244:12-25, PID 379.

Plaintiff was being intentionally vague, as he did not know what type of leave he was trying to take or what condition he was taking leave for during this period.   The FMLA does not require an employer to be clairvoyant. *Brenneman v. MedCentral Health System*. 366 F.3d 412, 428 (6th Cir. 2004).   Further, "sick" does not imply a "serious health condition" under the FMLA. *Collins v. NTN-Bower Corp.*, 272 F.3d 1006, 1008 (7th Cir. 2001) ("Sick" does not imply "a serious health condition".); see also *Satterfield v. Wal-Mart Stores, Inc*., 135 F.3d 973, 981-82 (5th Cir. 1998).

Plaintiff failed to give Defendants timely medical certification and legally sufficient notice. In requesting such certification and clarification from Plaintiff, Defendants discharged their duty to seek any additional information necessary for the leave to fall within the FMLA. *Hammon v. DHL Airways, Inc*., 165 F.3d 441, 450 (6th Cir. 1999).

As Plaintiff cannot satisfy the third or fourth elements for an FMLA interference claim, Plaintiff cannot satisfy element five, that the Defendants failed to give Plaintiff FMLA benefits to which he was entitled.   Plaintiff was given more than 15 days, in fact over a month after Plaintiff's first absence and Defendants' request for certification, to produce FMLA certification, but Plaintiff never did so.   "The employer shall advise an employee whenever the employer finds a certification incomplete, and provide the employee a reasonable opportunity to cure any such deficiency." 29 C.F.R. §825.305(d).   If the employee fails to produce the certification, the leave is not FMLA leave. 29 C.F.R. §825.311(b), §825.312(b).   In the instant matter, no FMLA certification was never provided by Plaintiff.

IV.     **Conclusion**

Because Plaintiff can neither establish a causal connection between protected FMLA activity and an adverse employment action, nor rebut any of Defendants' asserted legitimate, non-discriminatory reasons for issuing adverse employment actions, Defendants are **GRANTED** summary judgement on Plaintiff's claim for FMLA retaliation. Because Plaintiff can establish neither that he was entitled to leave under the FMLA, nor that he gave his employer notice of his intention to take FMLA leave, Plaintiff cannot establish that Defendant denied him FMLA benefits to which he was entitled. Therefore, Defendants are granted summary judgment on Plaintiff's claim of FMLA interference. Therefore, Motion for Summary Judgment by Defendants Montgomery County, Montgomery County Commissioners, Montgomery County Environmental Services, and Montgomery County Human Resources Department, ECF 38, is **GRANTED**. The Clerk is **ORDERED** to **TERMINATE** the instant case on the dockets of the United States District Court for the Southern District of Ohio, Western Division at Dayton.

**DONE** and **ORDERED** in Dayton, Ohio, this Wednesday, April 10, 2019.

s/Thomas M. Rose

_____

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE